UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ALEXANDER                                   CIVIL ACTION


VERSUS                                      NO: 12-1133


EXPRESS ENERGY OPERATING                    SECTION: "J"(3)
SERVICES, LP, ET AL


<u>**ORDER & REASONS**</u>

Before the Court is Defendant Express Energy Services Operating, L.P. ("Express Energy")'s **Motion for Summary Judgment on Seaman Status (Rec. Doc. 56)**, plaintiff Mike Alexander ("Alexander")'s opposition (Rec. Doc. 62), and Express Energy's reply memorandum (Rec. Doc. 71). Defendant's motion was set for hearing on April 23, 2014, on the briefs. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Defendant's motion should be **GRANTED** for the reasons set forth more fully below.

<u>**FACTS AND PROCEDURAL BACKGROUND**</u>

This matter arises from a maritime personal injury action wherein Alexander asserts claims for negligence under the Jones Act and general maritime law, as well as claims for unseaworthiness and maintenance and cure. The parties agree that Alexander was employed as a lead hand for plug and abandonment operations for Defendant Express Energy, and he had never performed any other job during his

approximate eight month employment with Express Energy. (Rec. Doc. 56-4, p. 2, ¶¶9-10) During the course of his employment with Express Energy, he had been assigned to work on six different projects on five different oil wells for four different customers,[1] and most of these projects were short-term assignments.[2] He was never assigned to a specific platform or vessel.  None of the lift boats used by Alexander were owned or operated by Express Energy, and it was Express Energy's customers that contracted for the lift boats. (Rec. Doc. 56-4, p. 3, ¶ 22)

At the time that this incident occurred, Express Energy had assigned Alexander to work on fixed drilling platforms for Apache Corporation ("Apache"),[3] and in connection with this assignment, he was using the L/B RAM X, a lift boat owned an operated by Aries Marine Corporation ("Aries").[4]  He was injured when an e-line and "tool assembly" struck him. The e-line was connected the tool assembly that was being put in place and to a crane.  (Rec. Doc. 28, p. 4-5, ¶¶ 8-9) The crane was being operated by an Aries employee and was attached to and being operated from the L/B RAM X.

---

[1] Alexander worked on three projects for Apache, one project for Energy 21, one project for Dynamic, and one project for Stone Energy. (Rec. Doc. 56-4, pps. 2-3, ¶¶ 14-19)

[2] The assignments required anywhere from 67 to 208 hours of work by Alexander.

[3] Apache is an oil and gas exploration company that owned and operated the fixed platform on which Alexander was assigned to work. (Rec. Doc. 28, p. 2, ¶ 1(d))

[4] Aries operates service vessels and provided the lift boats at issue in the present motion. (Rec. Doc. 28, p. 2, ¶ 1(b))

(Rec. Doc. 28, p. 4-5, ¶¶ 8-9) At some point during the move, the e-line broke causing both the line and the tool assembly to fall and injure Alexander. Prior to his injury, Alexander had used the lift boats primarily as living quarters, and sometimes as a place to store equipment or participate in meetings, and as a means of transportation from platform to platform. Following his injury, Alexander filed suit against Express Energy, Aries, and Wireline Repair Services, Inc. on May 3, 2012; however, he later amended his complaint to include Apache, its "company man" Tony Langman, and Express Energy's insurer, American Insurance Group. (Rec. Docs. 1 & 28) Express Energy filed the instant motion March 11, 2014 seeking dismissal of Alexander's claims against it.

### PARTIES' ARGUMENTS

Express Energy argues that summary judgment on seaman status should be granted because the evidence clearly shows that Alexander was not a seaman and that he cannot meet the two-prong showing required in *Chandris v. Latsis*, 515 U.S. 347 (1995). Express Energy cites to several cases from the Fifth Circuit to show that the first prong of this test is not met, including *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 347 (1999)(denying seaman status where the plaintiff's work was related to the platform work, not to the lift boats at issue in the case), *St. Romain v. Industrial Fabrication and Repair*, 203 F.3d 376 (5th Cir. 2000) (denying seaman status to a plug and abandonment assistant); *Bolden*

*v. Superior Energy Services, LLC*, 2003 WL 22835965 (E.D. La. 2003)(Zainey J.)(denying seaman status to a wireline operator who primarily worked on fixed platforms). Express Energy further argues that the second prong of the *Chandris* test cannot be met because Alexander spent less than 30 per cent of his time on vessels and because he is not affiliated with a specific vessel or fleet of vessels.

Alexander, on the other hand, contends that the facts he presents indicate that he is a seaman, or at least that there is a genuine issue of material fact as to seaman status. Alexander points out that he quartered in and had meetings in the Aries lift boat. Moreover, he points out that the crane that was in operation when he was injured was aboard the lift boat, and that crane was necessary for his work, even if it was operated by an Aries worker. Further, Alexander points out that Aries filled out an accident report after this incident. (Rec. Doc. 62-5) Alexander reminds the Court that the first prong of the *Chandris* test is "relatively easy" to meet, and that even a hairdresser on a cruise ship or a wireline hand on a lift boat can meet this standard (Rec. Doc. 62, p. 5) Further, Alexander points out that he worked on the vessel more than 30 per cent of the time. Alexander urges the Court to consider the decision in *Johnson v. TETRA Applied Technologies, L.L.C.*, No. 11-1992, 2012 WL 3253184 (E.D. La. Aug. 7, 2012)(Africk, J.) wherein the court found that a material issue of

fact existed as to seaman status based on plaintiff's evidence that he rode the lift boats from wellhead to wellhead, attended safety meetings with vessel workers on the lift boats, loaded and unloaded equipment from the lift boats, worked on vessels owned by one of four owners at all times, and spent more than 30 per cent of his time aboard vessels.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will

bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See*, *e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

A plaintiff seeking classification as a seaman for the purposes of the Jones Act must meet the two essential requirements set forth in *Chandris*. 515 U.S. 347. First, his duties must

6

contribute to the functioning of the vessel or to the accomplishment of its mission. Second, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (citing *Chandris*, 515 U.S. at 368).

Although it is unnecessary that a seaman aid in navigation or contribute to the movement of the vessel, the seaman must be doing the ships's work. *Chandris*, 515 U.S. at 357 (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)). In *Chandris*, the Supreme Court elaborated on the purpose of the Jones Act's connection requirement, which was to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368. The Fifth Circuit uses a general rule of thumb that an employee seeking Jones Act seaman status must be able to demonstrate that he spends at least thirty percent of his work in service of a vessel in navigation. *Roberts*, 266 F.3d at 375. The Supreme Court has also pointed that "courts should not use a 'snapshot' test for seamen status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." *Chandris,* 515 U.S. at 363.

The situs of the injury is not determinative of an employee's

seaman status, i.e., a seaman may suffer an injury onshore yet not lose his status as a Jones Act seaman. Rather, the key factor is the employee's status with regards to a vessel at the time of the accident. *Id.* at 359-60.

Here, the Court finds that Alexander fails to meet the first prong of the *Chandris* test; therefore, summary judgment is appropriate. In *Teaver v. Seatrax*, this Court found that

> [Plaintiff] does not meet the first prong of the *Chandris* test because he did not contribute to the functioning of the vessel. [Plaintiff] was not employed by the shipowner nor by the charterer. The fact that his employer provided him with space on a vessel that transported him to his workplace (the site of the crane) where he berthed, ate, discussed work-related matters, and inspected the tools that Seatrax employees would use to disassemble the crane are insufficient to show that [plaintiff] contributed to the functioning of the vessel or the accomplishment of its mission. Rather, these facts indicate that [plaintiff] was a passenger on a vessel provided by [the platform owner/time charterer of the vessel].

Teaver v. Seatrax of Louisiana, No. 10-1523, 2010 WL 3418231 (E.D. La. Aug. 23, 2010) aff'd sub nom. Teaver v. Seatrax of Louisiana, Inc., 434 F. App'x 307 (5th Cir. 2011)(Barbier, J.)

The facts before the Court today are very similar to those in *Teaver* as well as to those in *Hufnagel*. Alexander worked for Express Energy, thus he was not employed by the vessel owner, Aries. Alexander argues that he should be considered a seaman because: (1) he used the Aries lift boat to (a) store his tools, (b) transport he and his tools from the dock to the well locations, (c) as living quarters for sleep, meals, and relaxation, and (d)

for joint safety and/or strategy meetings with Aries workers; (2) he loaded and unloaded the lift boat; and (3) he sometimes cleaned the lift boat and moved its gangway from the well platform. (Rec. Doc. 62, p. 6-7) Such facts, however, lead to the conclusion that Alexander is not a seaman. *Hufnagel*, 182 F.3d at 347 (finding that "the facts that [plaintiff ate, slept, and spent time on the [lift boat] do not make him a crew member.]"); *Teaver*, 201 WL 3418231. Further, the fact that the crane was on the vessel does not mean that Alexander contributed to the mission of the vessel, rather it shows that the vessel supported the operations of Express Energy's work. *Hufnagel*, 182 F.3d at 347 (holding that plaintiff's duties did not contribute to the function of the vessel because his sole purpose was to repair a platform and the lift boat was only "present to support the repair crew by providing lodging quarters and a work area.")[5] Rather, as was the case in *Teaver* and *Hufnagel*, the facts indicate that Alexander was only a passenger on the lift boat and that the lift boat was merely a support vessel for the platform operations. Alexander is not akin to a hairdresser on a cruise boat, as he asserts that he is, because the hair dresser is performing a task that contributes to a function of the vessel—such as the housing of a crew—whereas Alexander was making use of the vessel, not furthering its purpose. Finally, though the Court

---

[5] This leaves only the fact that Aries filled out a routine accident report, which alone, is not sufficient to create a genuine issue of material fact.

9

recognizes the similarities between this case and the decision in *Johnson* cited by Alexander, the Court finds that the facts in *Hufnagel* are equally analogous and that this well-established Fifth Circuit precedent cannot be ignored. Therefore, Alexander has failed to meet his burden as to the first prong of *Chandris*, making summary judgment on his seaman status appropriate.[6]

Accordingly,

**IT IS ORDERED** that Express Energy's **Motion for Summary Judgment on Seaman Status (Rec. Doc. 56)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Jones Act claims and maintenance and cure claims against Express Energy Services Operation, L.P. are hereby **DISMISSED WITH PREJUDICE**.

---

[6] In addition to failing to meet the first prong of *Chandris*, Alexander fails to meet the second prong as well. In *Hufnagel*, the Fifth Circuit found that the plaintiff had no connection to the lift boat at issue, having never been on it before the job on which he was injured and having no expectation to ever return to that specific vessel, and that he had no connection with any other identifiable fleet of vessels. *Id.* (finding that plaintiff had been assigned to thirteen different customers on 26 different platforms and that all of the assignment were short-term and did not entail a permanent assignment to a vessel.); *St. Romain v. Industrial Fabrication and Repair Service, Inc.*, 203 F.3d 376, 379 (5th Cir. 2000) (no substantial connection to a fleet of vessels when plaintiff was assigned to six different platforms owned by thirteen different customers and the vessels used by the plaintiff varied by job.); but *see Johnson*, 2012 WL 32553184 (finding that where a plaintiff spent 67% of his time using lift boats, and the boats were owned by one of four companies each time, there is an issue of material fact as to whether he is a seaman.) Here, Alexander offers no evidence that he had ever been assigned to the L/B RAM X before or that he would in the future. Further, Defendants offered evidence that, during the course of his employment with Express, Alexander had been assigned to work on six different projects on five different oil wells, for four different customers. All of these projects were short-term assignments. He was never assigned to a specific platform or vessel. None of the lift boats used by Alexander were owned or operated by Express, rather it was Express's customers that contracted for the lift boats. (Rec. Doc. 56-4, p. 3, ¶ 22)

New Orleans, Louisiana this 29th day of April, 2014.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE